**Rebecca M. CAMPBELL, Plaintiff,**

v.

**Robert M. WALKER, Acting Secretary of the Army, Defendant.**

**Civil Action No. 97–2472–GTV.**

United States District Court,
D. Kansas.

Nov. 10, 1998.

Robert D. Beall, Davis, Beall, McGuire & Thompson, Chtd., Leavenworth, KS, for Plaintiff.

Janice M. Karlin, Office of U.S. Attorney, Kansas City, KS, Defendant.

### MEMORANDUM AND ORDER

VANBEBBER, Chief Judge.

Plaintiff brings this action alleging that defendant discriminated against her on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff contends that defendant failed to promote her to a GS–13 level position because she is female. The case is before the court on defendant's motion for summary judgment (Doc. 27). For the reasons set forth below, defendant's motion is granted.

### I. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

## II. FACTUAL BACKGROUND

The following facts are either uncontroverted or based on evidence submitted in summary judgment papers viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

### A. Facts Relating to Plaintiff's Desired Promotion

Plaintiff Rebecca C. Campbell began work at Fort Leavenworth, Kansas in 1988. On August 27, 1989, she was promoted to a GS–12 Education Specialist in the Faculty Development Division at the Command and General Staff College ("the college") at Fort Leavenworth. In December 1992, there was no acting-Chief of Faculty Development Division. In an effort to fill this void, the college assigned the duties of that position to plaintiff. Although she was performing the duties of the Chief of Faculty Development Division, plaintiff's title was Instructional System Specialist. In this position, plaintiff supervised three or fewer employees and did not supervise any subordinate supervisors.

In October 1993, the Civilian Personnel Office reviewed plaintiff's position and gave her a new job description, which included the duties of the Chief of Faculty Development Division. Although her new position was graded at a GS–13 level, the college did not promote plaintiff to a GS–13 level or pay her the commensurate salary due to budgetary constraints.

In March 1996, the college's Program Budget Advisory Council recommended that ten positions within the college be upgraded in accordance with their resurveyed descriptions. Seven of the ten individuals seeking promotion were male professors in the history department. The other three, including the plaintiff, were female. The Advisory Council did not prioritize the positions by their importance or suggest which promotions should be approved first. The annual cost of funding all ten promotions was estimated at $39,400.00.

The request to promote these ten individuals was sent to Brigadier General David Ohle for his consideration. On April 8, 1996, General Ohle decided that due to a severe budgetary crisis, the college could not justify promoting any of the ten candidates. According to General Ohle's declaration, the college had suffered reductions in its operations budget of $1,000,000.00 in fiscal years 1993 and 1994, $700,000.00 in fiscal year 1995, and $1,000,000.00 in fiscal year 1996. His budget experts advised him that continuing budget cuts could result in a reduction-in-force at the college. General Ohle concluded that promoting the ten individuals would be a misguided and short-sighted employment decision. If the promotions were approved, it was predicted that one or more of these same ten individuals would lose their positions due to resulting reductions in force.

Upon General Ohle's decision not to promote any of the ten individuals, plaintiff filed a complaint with the Equal Employment Opportunity office at Fort Leavenworth. She claimed that she had been discriminated against because of her gender, based on her lack of promotion and the contemporaneous promotion of a male, Frederick Fernengel, from a GS–12 to a GS–13 position.

### B. Facts Relating to Frederick Fernengel's Promotion

Frederick Fernengel began work at Fort Leavenworth in 1981 as an Education Specialist in the Directorate of Academic Operations within the college. He was hired at a GS–12 level. In 1983, Fernengel became involved in the planning and building of a new educational building for the college. In an effort to align his title and position with his work activities, a Management Analyst job description was written and approved for Fernengel. On March 9, 1994, Lieutenant Colonel Richard M. Hart, then-Director of College Services, officially requested Fernengel's reassignment as a management Analyst to accommodate the on-going construction of the new instruction building and the refurbishment of another college building.

To effectuate this reassignment, the college abolished Fernengel's former position and transferred funding for that position to the Directorate of College Services. In order to qualify for the Management Analyst position, Fernengel was required to have

twelve months of specialized experience. Because Fernengel had only eight months of specialized experience, Colonel Hart asked the college to waive the specialized experience requirement to allow Fernengel to assume the new job. According to the declaration of Lurita J. Williams, the supervising staffing specialist at Fort Leavenworth, the United States Office of Personnel Management Qualification Standards allow waiver of the one-year specialized experience requirement if management believes that it is in the best interest of the organization to do so. Accordingly, this requirement was waived, and Fernengel began work as a Management Analyst.

In early 1995, Colonel William Bristow learned that Lieutenant Colonel Hart was planning to retire in May 1995. At that time, Colonel Bristow expected Colonel Clinton Ancker to fill the vacant position of Director of College Services in August 1995. To fill this gap between permanent directors, Colonel Bristow determined that Fernengel should be detailed as Acting–Director of College Services because he had worked under Lieutenant Colonel Hart's supervision for over a year and was capable of filling that position. In this interim position, Fernengel remained at his GS–12 pay level.

Shortly after Colonel Ancker arrived and became Director of College Services, he was unexpectedly sent to Tirana, Albania for a six-month assignment. Fernengel was again detailed into the position of Acting–Director of College Services. While Colonel Ancker was in Albania, another colonel, Colonel Thurman, unexpectedly retired. Prior to his retirement, Colonel Thurman served as the Director of the Concepts and Doctrine Directorate of the college. Colonel Bristow decided that Colonel Ancker, upon his return from Albania, should replace retiring colonel Thurman as Director of the Concepts and Doctrine Directorate. Colonel Bristow believed that it was more important to have a colonel in that substantive military position rather than in the Director of College Services position. Colonel Bristow then filled the vacant Director of College Services position with Fernengel.

In his declaration, Colonel Bristow explained that the Director of College Services position was of critical importance to the operation of the college. The general mission of the position is to supervise the general administration, logistics, resource management, maintenance, and non-academic operations of the college. The Director of College Services oversees the entire college budget, plans, develops, operates, and maintains the automation and communication systems throughout the college, manages physical facilities of more than 400,000 square feet of classroom, office, and administrative space, and leads a staff of approximately 55 military and civilian personnel.

### III. DISCUSSION

Plaintiff asserts gender discrimination claims under Title VII, alleging that defendant failed to promote her to a GS–13 grade level. Plaintiff, however, does not specify to which position she was allegedly denied promotion. In various sections of her complaint and summary judgment papers, plaintiff appears to claim that she was denied a promotion to a GS–13 Supervisory Instructional System Specialist position because she is female. In other sections, she appears to claim that she was denied promotion to the Director of College Services position. The court, therefore, will address both possible avenues for plaintiff's failure to promote claim.

The structure for analyzing a Title VII failure to promote claim is well established. First, plaintiff must establish a prima facie case for discrimination. *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1362 (10th Cir.1997). If she does so, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for its questioned employment decision. *Id.* Finally, if defendant meets this burden, plaintiff must show that the stated reason is actually pretext for illegal discrimination. *Id.* Throughout this burden-shifting scheme, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v.*

*Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ The Tenth Circuit has recognized that the elements of a prima facie case set forth in *McDonnell Douglas*[1] are applicable to promotion cases. *Nulf v. International Paper Co.*, 656 F.2d 553, 557 (10th Cir.1981). To establish a prima facie case of failure to promote, plaintiff must demonstrate that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) the employer did not promote her; and (4) the position remained open and the employer continued to seek other candidates who were not women or the employer promoted a male. *See Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1534 (10th Cir.1995).

### A. GS–13 Supervisory Instructional System Specialist Position

In October 1993, the Civilian Personnel Office reviewed the GS–12 Supervisory Instructional System Specialist position occupied by plaintiff. As a result of this review, the college graded the position as a GS–13 level position. Plaintiff performed the duties of this position, but was never promoted to a GS–13 level.

■ Plaintiff has established the first three elements of her prima facie case: she is a member of a protected class; she was qualified for the GS–13 Supervisory Instructional System Specialist position; and she was not promoted. Plaintiff, however, has failed to establish the fourth element—that defendant continued to seek other candidates who were not women or promoted a male to the GS–13 Supervisory Instructional System Specialist position. Nothing in the record indicates that defendant filled the GS–13 Supervisory Instructional System Specialist position with a male or left the position open to seek male candidates. Accordingly, the court concludes that plaintiff has failed to establish a prima facie case for gender discrimination in regard to defendant's failure to promote her to the GS–13 Supervisory Instructional System Specialist position.

### B. GS–13 Director of College Services Position

Plaintiff also claims that she was denied promotion to the Director of College Services position because of her gender. Plaintiff satisfies elements one, three, and four of her prima facie case: she is a female who was not promoted to the Director of College Services position and that position was filled by a male. Plaintiff, however, fails to establish that she was qualified for the position.

■ In her summary judgment papers, plaintiff provided the court with no evidence that she was qualified for the Director of College Services position. Rather, plaintiff merely asserted that "[a] review of the background of Plaintiff and Ferengel as contained in the record indicate [sic] Plaintiff had more experience, although she was not a retired reservist which seemed to be the only qualification of Ferengel when he was preselected to fill the [Director of College Services] position...." No citations to the record or any other factual support was provided to support this statement. Due to plaintiff's complete failure to provide evidence of her qualifications for the Director of College Services position, the court concludes that she has failed to state a prima facie case for gender discrimination in regard to this position. Despite plaintiff's failure to establish her prima facie case, the court has reviewed the record and determines that plaintiff was not qualified for the Director of College Services position.

In response to plaintiff's claims of gender discrimination, defendant requested that William J. McNamee, Supervisory Personnel Management Specialist at the Civilian Personnel Advisory Center at Fort Leavenworth, review plaintiff's qualifications as they related to the Director of College Services position. McNamee concluded that plaintiff was not qualified for the Director of College Services position. According to his sworn declaration, the technical job description of the Director of College Services position is "GS–13 Support Services Program Manager." One requirement for promotion to the

1. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

GS–13 Support Services Program Manager position is that the candidate must have GS–12 experience in the same specific area of expertise. McNamee concluded that, while plaintiff had extensive experience and exceptional skills in the area of education, she did not have the requisite experience to qualify for the GS–13 Support Services Program Manager position.[2]

The responsibilities associated with the Director of College Services position are also relevant to whether plaintiff was qualified. The Director of College Services oversees the entire college budget, plans, develops, operates, and maintains the automation and communication systems throughout the college, manages physical facilities of more than 400,000 square feet of classroom, office, and administrative space, and leads a staff of approximately 55 military and civilian personnel. Plaintiff fails to provide the court with any evidence that she was qualified to fill such a position. Furthermore, it is uncontroverted that, in her role as an Instructional System Specialist, plaintiff never supervised more than three employees. The court concludes that plaintiff was not qualified for the Director of College Services position. Defendant's motion for summary judgment is granted.

IT IS, THEREFORE, ORDERED that defendant Secretary of the Army's motion for summary judgment (Doc. 27) is granted.

**IT IS SO ORDERED.**

---

**2.** In her summary judgment papers, plaintiff argues that the qualifications listed by defendant were not actually required. Plaintiff bases this contention on the fact that defendant waived the twelve-month specialized experience requirement when Fernengel assumed the Management Analyst position in March 1995. Plaintiff, however, does not explain how this fact is relevant to the qualifications necessary for promotion to the GS–13 Director of College Services position. The court concludes that this fact is not relevant and that plaintiff's argument fails to create a genuine issue of fact as to whether the listed qualifications were required.